1
2
3
4
5                          UNITED STATES DISTRICT COURT
6                          EASTERN DISTRICT OF WASHINGTON

7    ANA DOZIER-QUINE,
                                              NO:  1:14-CV-3176-TOR
8                          Plaintiff,
                                              ORDER GRANTING DEFENDANT'S
9          v.                                 MOTION FOR SUMMARY
                                              JUDGMENT
10   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security
11   Administration,

12                         Defendant.

13         BEFORE THE COURT are the parties' cross motions for summary

14   judgment, ECF Nos. 17, 20.  Plaintiff is represented by D. James Tree.  Defendant

15   is represented by Special Assistant United States Attorney Leisa A. Wolf.  The

16   Court has reviewed the administrative record and the parties' completed briefing

17   and is fully informed.

18         Ana Dozier-Quine seeks judicial review of the Commissioner's final

19   decision denying her Child Disability Benefits under Title II and Supplemental

20   Security Income under Title XVI.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work[,] but cannot, considering his [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

To be entitled to child's insurance benefits under Title II of the Social Security Act, a claimant over the age of 18 must establish, inter alia, a disability that began prior to the age of 22. *See* 20 C.F.R. § 404.350(a)(5). Thus, claimant must prove her disability began on or before her 22nd birthday.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See Molina v. Astrue*, 674 F.3d at 1110; 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe, or more

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC"), defined generally as the most that the claimant can do in a work setting on a sustained basis despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work").  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience.  *Id.*  If the claimant is capable of adjusting to other

work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The burden of proof is on claimant at steps one through four above. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On May 12, 2009, Plaintiff filed concurrent applications for child disability insurance benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. Tr. 204-205, 206-209. Her claims were denied initially and upon reconsideration. Tr. 118-133; 137-150. She filed a request for a hearing, Tr. 151-53, and a hearing was held February 25, 2013, Tr. 33-75. At the hearing, Plaintiff amended her alleged onset date to March 1, 2009. Tr. 36.

The ALJ issued a written decision on March 19, 2013, concluding that Plaintiff was not disabled under the Social Security Act. Tr. 18-28. The ALJ found Plaintiff had not attained the age of 22 as of March 1, 2009, the alleged

onset date. Tr. 20. At step one, the ALJ found Plaintiff had engaged in substantial gainful activity in 2012, but determined her work activity from 2009 through 2011 did not rise to the level of substantial gainful activity. Tr. 20-21. At step two, the ALJ determined Plaintiff has the following severe physical impairments: chronic pain in subtalar joints due to capsulitis and multiple surgeries (i.e., bunionectomy, left hallux abductovalgus with recurrent bunion, and deformity with hardware removal); obesity; and no vision left eye (with normal right eye [vision]). Tr. 21. Plaintiff's hypothyroidism, depression, anxiety, and pain disorder, were determined to be "non-severe" impairments. Tr. 21-23. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 23. The ALJ found that Plaintiff had the residual functional capacity to:

> perform a reduced range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). She can lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit for about six hours and stand and/or walk for about two hours in an eight-hour day with regular breaks. She can stand and/or walk in increments of up to 15 minutes at a time. She has an unlimited ability to push/pull within these exertional limitations. She can never climb ladders, ropes, or scaffolds, but she can occasionally climb ramps and stairs. She can frequently balance, kneel, crouch, and crawl. She has an unlimited ability to stoop. She has no vision in her left eye but has normal vision in her right eye (i.e., her vision is adequate for her to do such activities as using a computer, reading, and driving). She should avoid concentrated exposure to extreme cold, vibration, and hazards.

Tr. 23-24.  At step four, the ALJ determined Plaintiff could not perform her past relevant work as a newspaper carrier and cashier, which involved standing and/or walking for longer than 15 minutes at a time.  Tr. 26.  At step five, the ALJ considered Plaintiff's age, education, work experience, and residual functional capacity, and determined based upon the Medical Vocational Guidelines and testimony of a vocational expert, that "there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform."  Tr. 26.  These representative occupations include: order clerk (DOT code 209.567-014/sedentary/SVP 2); stuffer (DOT code 731.685-014/sedentary/SVP 2), and fishing real assembler (DOT code 732.684-062/sedentary/SVP 2). Tr. 27.  On that basis, the ALJ found Plaintiff was not disabled.  Tr. 27-28.

On September 23, 2014, the Appeals Council denied Plaintiff's request for review, Tr. 1-3, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. See 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff raises the following three issues:

1.  Did the ALJ err in failing to properly account for Ms. Dozier-Quine's depression, anxiety, and pain syndrome?

2.  Did the ALJ err in finding Ms. Dozier-Quine's symptom testimony,
    including the frequency with which she has to elevate her feet, not fully
    credible?

3.  Did the ALJ err by rejecting Dr. Cardon's opinion that Ms. Dozier-Quine
    needs to lie down 30 minutes twice a day?

**DISCUSSION**

**A. Step Two, Non-Severe Mental Impairments**

Plaintiff argues the ALJ erroneously concluded that her depression, anxiety, and pain disorder were not severe impairments. ECF No. 17 at 18. Plaintiff contends this error prejudiced the ALJ's RFC determination and her credibility determination. *Id*. at 20. Plaintiff asserts that her mental impairments as assessed by Dr. Schneider in 2010 (Tr. 449-455) and Dr. Harrison (Tr. 458-462), and as she described at the hearing, severely limit her ability to function. ECF No. 21 at 8-9.

The step two inquiry is merely a *de minimis* screening device intended to dispose of groundless claims. *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001). It does not result in a finding of disability if a particular impairment is found to be "severe" within the meaning of the Commissioner's regulations. *See Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007).

An impairment, to be considered severe, must significantly limit an individual's ability to perform basic work activities. 20 C.F.R. § 416.920(c); SSR

96-3P, 1996 WL 374181; *see Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  Basic work activities include "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."  20 C.F.R. § 416.921(b).  An impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, and "under no circumstances may the existence of an impairment be established on the basis of symptoms alone."  *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005) (citing SSR 96-4p, 1996 WL 374187 (July 2, 1996)) (defining "symptoms" as an "individual's own perception or description of the impact of" the impairment).  Plaintiff bears the burden of proving that his medically determinable impairment or its symptoms affect his ability to perform basic work activities.  *Edlund*, 253 F.3d at 1159-60.

In determining, at step two, the severity of mental functional limitations, an ALJ must consider the claimants:  (1) daily activities; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  20 C.F.R. § 404, subpt. P, app. 1, 12.00(C); SSR 96-8p, 1996 WL 374184 (July 2, 1996) ("]P]aragraph B and paragraph C" limitations "are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.").  If the ALJ concludes that the limitation is "mild" or "none" in the first three functional areas and "none" in the fourth area, a finding that the impairment is not

1    sever is appropriate, "unless the evidence otherwise indicates that there is more

2    than a minimal limitation in [the claimant's] ability to do basic work activities."

3    20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1); see also *Fisher v. Astrue*, 788

4    F.Supp.2d 1219, 1229-30 (E.D. Wash. 2011).

5    　　　　Here, the ALJ concluded that Plaintiff had (1) no limitation in activities of

6    daily living, (2) no limitation in social functioning, (3) mild limitation in

7    concentration, persistence and pace, and (4) no episodes of decompensation.  Tr.

8    22-23.  Plaintiff disputes the ALJ's second and third findings.  She contends her

9    mental impairments have more than minimal impact on her social functioning

10   because she had only two friends, had problems socializing with others and found

11   it difficult to talk to her supervisor.  ECF No. 17 at 18-19.  Plaintiff claims Dr.

12   Schneider, an examining psychologist, "found that her affect was constricted."  *Id*.

13   at 19.  That is not the whole truth. Dr. Schneider described Plaintiff's behavior

14   during the examination as follows: "Affect was basically normal other than that

15   first constriction during her shy period."  Tr. 453.  Plaintiff also observes that the

16   psychologist found her to be "quite depressed, socially withdrawn young woman."

17   ECF No. 17 at 19; Tr. 454.  However, the ALJ found that Plaintiff has friends, goes

18   outside alone, drives, shops, goes to school, goes to the movies, has performed

19   music in public, and works 22 to 24 hours  a week as a cashier. Tr. 22.  The record

20   also reflected pleasant and appropriate interactions with providers and others.  *Id*.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

1  Substantial evidence in the record supports the ALJ's finding of no limitation in

2  social functioning.

3   With regards to the ALJ's finding of mild limitation in concentration,

4  persistence or pace, the ALJ observed that the Plaintiff had received very little

5  mental health treatment.  *Id*.  Plaintiff contends that Dr. Schneider indicated that

6  she had likely been depressed for a long time and learned to see her condition as

7  normal over the years.  ECF No. 17 at 19.  She claims to have problems with

8  concentration, organization, and motivation, consistent with a diagnosis of

9  depression and caused by her largely-unaddressed mental health issues.  *Id*. at 20.

10   The ALJ accepted Dr. Harrison's second 2012 mental status examination

11  (treatment examination) showing she was "fully oriented with normal memory

12  with normal motor behavior, linear and goal directed thought process, logical

13  thought content, and good impulse control." Tr. 22; 458-59.  The ALJ also found

14  that Plaintiff's ability to use the computer, read without difficulty, shop and handle

15  her own money, and work two jobs while going to school "suggests that she has no

16  significant limitation in cognitive functioning." Tr. 22.

17   Plaintiff contends that in making these findings the ALJ disregarded the

18  uncontroverted fact she "suffers from depression and social anxiety." ECF No. 21

19  at 8. However, a medical diagnosis alone is insufficient to establish a severe

20  impairment under the regulations.  The ALJ found that "[a]lthough the claimant's

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

mental health impairments are medically determinable, I have determined that they

are non-severe based on her lack of significant mental health treatment, her

relatively mild symptoms, her performance on mental status examinations, and her

daily activities including working and going to school as set forth above.").  Tr. 25.

Substantial evidence supports the ALJ's conclusion that Plaintiff's mental

impairments are non-severe.

**B. Plaintiff's Symptom Testimony**

Plaintiff argues the ALJ erred in finding her symptom testimony, including

the frequency with which she has to elevate her feet, was not fully credible.  ECF

No. 17 at 11-16.

To evaluate the credibility of a claimant's testimony regarding subjective

complaints of pain and other symptoms, an ALJ must engage in a two-step

analysis.  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).  "First, the ALJ

must determine whether the claimant has presented objective medical evidence of

an underlying impairment which could reasonably be expected to produce the pain

or other symptoms alleged."  *Id.* (*quoting Lingenfelter v. Astrue*, 504 F.3d 1028,

1035-36 (9th Cir. 2007) (internal quotations omitted).  "In this analysis, the

claimant is not required to show 'that her impairment could reasonably be expected

to cause the severity of the symptom she has alleged; she need only show that it

could reasonably have caused some degree of the symptom.'"  *Id.* (*quoting Smolen*,

80 F.3d at 1282). "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" *Id. (quoting Smolen*, 80 F.3d at 1281). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Id.* at 1014-15 (*quoting Smolen*, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Id.* at 1015 (*quoting Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors that an ALJ may consider in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). The "clear and convincing reasons" for an adverse credibility finding must be supported by substantial evidence. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (stating the next

task for a court is "to determine whether the ALJ's adverse credibility finding of [the claimant's] testimony is supported by substantial evidence under the clear-and-convincing standard").[1]  If, "ALJ's credibility finding is supported by substantial evidence in the record, [this Court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d at 959 (citation omitted).

Plaintiff testified that she can only stand for a half hour before her feet "start killing" her.  Tr. 51.  Plaintiff explained long shifts or work two days in a row were "very painful." Tr. 45.  She would elevate her feet on breaks and by the end of her shift would hurt so much that her pain was at a level eight out of ten. Tr. 51.  She also testified that sitting also caused her foot pain. Tr. 67. When questioned by the ALJ if she would need to elevate her feet for one hour after sitting for two or three hours she responded "yeah, yeah, yeah, that's what – yeah, that would be about right, I suppose." Tr. 66. When asked how high, Plaintiff suggested elevating them above her heart. Tr. 52.  When asked whether she could perform a sedentary job with regular breaks allowing her to elevate her feet, Plaintiff responded "I could do

---

[1]  The Commissioner disputes this standard of review. The Ninth Circuit rejected the Commissioner's similar argument in *Burrell v. Colvin*, 775 F.3d 1133, 1136–37 (9th Cir. 2014), and that holding is binding on this Court.

it and I don't know how long I could do that for. I don't know if I could do that for a day, a month, a year." Tr. 67.

The ALJ found that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms including pain was not fully credible for three reasons: (1) her daily activities and ability to perform part-time work and go to school; (2) because the medical evidence did not support the severity of the allegations; (3) and because of evidence that Plaintiff's "mother is a motivating factor" behind Plaintiff's disability claim. Tr. 24-25. The Plaintiff disputes that these reasons were specific, clear, and convincing.

The ALJ first found that Plaintiff's independent activities of daily living are inconsistent with her allegations of disabling functional limitations. Tr. 24. The ALJ extensively discussed the evidence that she could drive, work as a newspaper carrier, perform music on stage, attend judo class a couple times a week, take care of personal needs, play on the computer, attend college, and work part-time as a cashier at Shopko, among other activities. Tr. 22. Plaintiff disputes the ALJ's statement that Plaintiff's "ability to work as a [cashier] for 22 to 24 hours per week suggests that she would be able to perform work with less standing and walking on a sustained basis." ECF No. 17 at 12-13 (citing Tr. 24). Plaintiff points out she was unable to successfully hold down two jobs and maintain her academics. *Id*. However, Plaintiff testified she quit her job as a newspaper carrier not because of

her impairments but because she "was tired of getting up at 3:00 o'clock in the morning…" Tr. 48. The Plaintiff's level of activity and her ability to withstand her pain while performing part-time work does not lend support to allegations of disabling pain and are factors the ALJ may consider in assessing credibility. *See, e.g., Magallanes v. Bowen,* 881 F.2d 747, 756 (9th Cir. 1989) ("Our cases no not prevent the ALJ from taking into account a claimant's level of activity. . ."); *Bray v. Comm'r,* 554 F.3d at 1227 (claimant was not credible because she "recently worked as a personal caregiver for two years, and has sought out other employment since then"). This was a specific, clear and convincing reason for the ALJ to discount Plaintiff's credibility.

The ALJ's second reason for finding Plaintiff less than credible were inconsistencies with the medical evidence. Tr. 25. The ALJ observed her foot pain was surgically treated and post-operatively deemed "stable"; she was not taking any medications; and two providers, including her podiatrist, Stuart Cardon, opined she could likely perform a job that did not involve a lot of standing or walking. *Id*. To accommodate for this, the ALJ's RFC finding included a reduced range of light work involving a greater limitation on standing and walking. Tr. 23 ("She can sit for about six hours and stand and/or walk for about two hours in an eight-hour day with regular breaks. She can stand and/or walk in increments of up to 15 minutes at a time."). Plaintiff claims the ALJ's analysis minimizes the fact

she suffers from chronic pain and as was advised by Dr. Daniel Kwon at Water's

Edge to avoid narcotic therapy for long-term treatment of a chronic nature (Tr.

400). ECF No. 17 at 13-14. The inconsistencies noted by the ALJ are specific,

clear and convincing reasons to partially reject Plaintiff's alleged limitations. *See*

*Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (plaintiff's claim of extreme

pain inconsistent with "minimal, conservative treatment" received); *Johnson v.*

*Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ correctly considered

conservative nature of treatment in determining credibility).

　　　　Third, the ALJ noted the possibility Plaintiff's application was motivated by

secondary gain suggesting that "the claimant's mother is a motivating factor

behind the claimant's disability claim." Tr. 25.  The ALJ based this finding on two

different treatment providers' notes.  A clinic note from Plaintiff's podiatrist noted

that Plaintiff's reported pain seemed less severe outside her mother's presence.  Tr.

340 (relating to treatment for a fractured big toe).  Another provider remarked her

mother was "somewhat pushy about the claimant's disability."  Tr. 392 (her

mother says she should be on disability, but Plaintiff seems rather excited about

having a job).  The Commissioner has not defended the ALJ's reasoning.

　　　　The elimination of any one reason does not necessarily mean the ALJ's

entire credibility assessment is improper. *Bray v. Comm'r*, 554 F.3d at 1227

(finding error, if any, was harmless).    The ALJ's other reasons for finding Plaintiff less than fully credible are valid, convincing grounds.

**C. Opinion of Stuart Cardon, DPM**

Plaintiff contends that the ALJ improperly rejected the Dr. Cardon's opinion that Plaintiff needs to lie down for 30 minutes, twice a day.  ECF No. 17 at 16-18. The ALJ gave limited weight to Dr. Cardon's assessment, explaining that "Dr. Cardon provided no reason in support of his opinion, which is inconsistent with the claimant's treatment records and daily activities."  Tr. 25.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d at 1201-02 (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

1      If a treating or examining physician's opinion is uncontradicted, an ALJ may

2   reject it only by offering "clear and convincing reasons that are supported by

3   substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

4   "However, the ALJ need not accept the opinion of any physician, including a

5   treating physician, if that opinion is brief, conclusory and inadequately supported

6   by clinical findings." *Bray v. Comm'r*, 554 F.3d at 1228 (internal quotation marks

7   and brackets omitted). "If a treating or examining doctor's opinion is contradicted

8   by another doctor's opinion, an ALJ may only reject it by providing specific and

9   legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at

10  1216 (citing *Lester*, 81 F.3d at 830-31).

11     On a form entitled "Medical Report", Dr. Cardon answered questions on

12  Plaintiff's behalf.  Tr. 456-457.  To the question: "Does your patient have to lie

13  down during the day?" He checked the line for "yes" but wrote "sit in recliner"

14  next to the response.  To the question: "If yes, for how long and what reason:", he

15  simply wrote "30 min 2 x's day" without any elaboration for the reason.  *Id*.  He

16  further opined on the same form that work in a "sit down job" would not likely

17  cause Plaintiff's condition to deteriorate and she would have no expected

18  absenteeism because she "just tolerates the pain." *Id*.

19     The ALJ correctly noted that Dr. Cardon "provided no reason" because

20  neither the form itself nor any of Dr. Cardon's clinical notes mention or advise of

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 20

any need to "lie down" as Plaintiff describes it, or to "sit in recliner" as Dr. Cardon describes it.  At most, his comment on the form about the need to "sit in recliner" comports with a single clinical note discussing the possible benefit of being "off the foot." Tr. 429.  But, as noted by the ALJ, Dr. Cardon expressed his belief both on the form and in his clinical notes that she could perform a job that did not involve a lot of standing or walking.  Tr. 25.  The Court concludes the ALJ gave specific and legitimate reasons, supported by substantial evidence, for according less weight to this unexplained limitation about the need for a recliner.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 17, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 20, is **GRANTED**.

The District Court Executive is directed to file this Order, enter Judgment accordingly, provide copies to counsel, and **CLOSE** the file.

**DATED** March 25, 2016.



THOMAS O. RICE
Chief United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 21